# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

| | |
|---|---|
| **NELLIE MIGUES** | **CASE NO. 6:19-CV-00976** |
| **VERSUS** | **JUDGE JUNEAU** |
| **WE CARE HOMES INC ET AL** | **MAGISTRATE JUDGE HANNA** |

## MEMORANDUM RULING

Before the Court is the Plaintiff's Motion to Conditionally Certify a FLSA Collective Action, Approve Notice and Expedited Consideration. (Rec. Doc. 9; Memorandum in Support at Rec. Doc. 12). Defendants, We Care Homes, Inc. and Kyle Jones, opposed the Motion (Rec. Doc. 13), and Plaintiff replied (Rec. Doc. 16). Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, Plaintiff's Motion is GRANTED.

## Factual Background

Plaintiff, Nellie Migues, individually and on behalf of all other similarly situated current and former employees of Defendants, filed this suit under the Fair Labor Standards Act against her former employer, We Care Homes, Inc. and Kyle Jones, We Care's alleged manager. Plaintiff alleges that she was employed by We

Care as a home health worker[1] from September 2018 through June 2019, and that during that time she worked hours in excess of forty hours per week but was not paid overtime as required by the FLSA. (Rec. Doc. 1; 9-2, ¶2-3; 12). She further attested that her We Care supervisor assigned her hours to work with each client and that because of the nature of the work and the works days scheduled by We Care, she and other home healthcare workers regularly worked more than forty hours in a week. (Rec. Doc. 9-2, ¶7-9). She was required to record her time on a standardized We Care form, which she turned in to We Care. (Rec. Doc. 9-2, ¶10). Plaintiff asserted that she had "personal knowledge from talking to We Care administrators and other home health workers that We Care did not pay its home health workers overtime for hours worked over 40 in a work week," and that "all home healthcare workers employed by We Care shared the same job descriptions and performed the same basic functions." (Rec. Doc. 9-2, ¶13-14).

Plaintiff filed the instant Motion seeking conditional class certification under the FLSA authorizing such actions. In support of her Motion, Plaintiff submitted, in addition to her own affidavit, the affidavits of Ashley Walker and Samantha Migues, each of whom attested similarly. (Rec. Doc. 9-6 and 9-7).

---

[1] Plaintiff describes the duties of a home health worker as assisting the client with daily living activities, bathing, peri-care or sponge baths, house cleaning, reminding clients to take prescribed or over-the-counter medications, and companionship. (Rec. Doc. 9-2, ¶5).

## Law and Analysis

The Fair Labor Standards Act (FLSA) obligates employers to pay their employees over-time rates (one and one-half times of their regular rate of pay) for hours worked over forty hours per week. 29 U.S.C. §207(a)(1). An employee may bring a claim for FLSA violations on behalf of himself and other similarly-situated employees, but the other employees do not become plaintiffs in the action unless and until they consent in writing, or "opt-in." 29 U.S.C. §216(b); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 (5th Cir. 2008).

The remedial nature and purpose of the FLSA "militate strongly in favor of allowing cases to proceed collectively." *West v. Lowes Home Centers, Inc.*, No. 6:09-1310, 2010 WL 5582941, at *3 (W.D. La. Dec. 16, 2010), report and recommendation adopted, No. 6:09-1310, 2011 WL 126908 (W.D. La. Jan. 14, 2011) (quoting *Roussell v. Brinker Int'l, Inc.*, No. H-05-3733, 2008 WL 2714079, at *24 (S.D. Tex. July 9, 2008)). A collective action affords plaintiffs "the advantage of lower individual costs to vindicate rights by the pooling of resources. The judicial system benefits by efficient resolution in one proceeding of common issues of law and fact...." *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Green v. Plantation of Louisiana*, No. 2:10-0364, 2010 WL 5256354, *3 (W.D. La. Nov. 24, 2010), report and recommendation adopted, No. 2:1-0364, 2010 WL 5256348 (W.D. La. Dec. 15, 2010); *Boudreaux v. Schlumberger Technology Corp.*, No. 6:14-2267,

2015 WL 796602, *2 (W.D. La. Feb. 25, 2015). District courts typically apply the two-step framework enunciated in *Lusardi v. Xerox Corp.*[2]

> [C]ollective actions typically proceed in two stages. First, the plaintiff moves for conditional certification of his or her collective action. The district court then decides, usually based on the pleadings and affidavits of the parties, whether to provide notice to fellow employees who may be similarly situated to the named plaintiff, thereby conditionally certifying a collective action. Second, once discovery is complete and the employer moves to decertify the collective action, the court must make a factual determination as to whether there are similarly-situated employees who have opted in. If so, the collective action may proceed, and if not, the court must dismiss the opt-in employees, leaving only the named plaintiff's original claims.
>
> *Sandoz,* 553 F.3d at 916, fn. 2 (5th Cir. 2008), citing *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1213–14 (5th Cir.1995), *overruled on other grounds by Desert Palace, Inc. v. Costa,* 539 U.S. 90 (2003).[3]

**A.** **<u>Whether conditional certification is warranted.</u>**

Plaintiff invokes stage one by seeking conditional certification and urging the Court to facilitate providing notice to other We Care employees. The standard for satisfying step one is "fairly lenient." *Mooney*, 54 F.3d at 1214. The initial determination of whether the putative collective members are sufficiently similarly

---

[2] *Lusardi v. Xerox Corp.,* 118 F.R.D. 351 (D.N.J.1987), *mandamus granted in part, appeal dismissed, Lusardi v. Lechner,* 855 F.2d 1062 (3rd Cir.1988), *vacated in part, modified in part, and remanded, Lusardi v. Xerox Corp.,* 122 F.R.D. 463 (D.N.J.1988), *aff'd in part, appeal dismissed, Lusardi v. Xerox Corp.,* 975 F.2d 964 (3rd Cir.1992).

[3] Although the Fifth Circuit has not expressly adopted the foregoing two-step approach for adjudicating FLSA collective actions, the court has generally not discouraged it. See *In re JPMorgan Chase & Co.,* 916 F.3d 494, 500, fn. 9 (5th Cir. 2019).

situated to the named plaintiff to proceed collectively is based on "minimal evidence," before discovery happens. *Id*. This Court has further previously synthesized the law applicable to conditional certification as follows:

> At the notice stage, the plaintiff bears the burden of making a preliminary factual showing that at least a few similarly situated individuals exist. The plaintiff may satisfy his or her burden through submission of evidence in the form of pleadings, affidavits[,] and other supporting documentation. At the notice stage, 'courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination.' Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in conditional certification of a representative class where potential class members receive notice and the opportunity to opt-in. The lenient standard requires only substantial allegations that potential members were together the victims of a single decision, policy, or plan.
>
> *Venable v. Schlumberger Ltd. (Schlumberger N.V.),* No. 6:16-CV-00241, 2017 WL 2870400, at *3 (W.D. La. June 5, 2017), *report and recommendation adopted sub nom. Venable v. Schlumberger Ltd.,* No. 6:16-CV-00241, 2017 WL 2870063 (W.D. La. July 3, 2017). (Internal quotations and citations omitted.)

"[W]hile the standard at this stage is not particularly stringent, it is by no means automatic." *Solomon v. Serenity Square, LLC*, No. 6:18-CV-1025, 2019 WL 1923672, at *2 (W.D. La. Apr. 29, 2019) (M.J. Whitehurst), citing *Lima v. Int'l Catastrophe Sols., Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007) (citing *Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1213 (11th Cir. 2001)). Courts consider factors such as whether potential plaintiffs were identified; whether affidavits of potential plaintiffs were submitted; and whether evidence of a wide spread

discriminatory plan was submitted." *Id.* citing *Stiles v. FFE Transp. Servs, Inc.*, 2010 WL 935469, at *2 (N. D Tex. Mar. 15, 2010). As a practical matter, most district courts in this Circuit "require some factual basis to the plaintiff's allegations that a collective action is warranted before granting notice and conditional certification." *Id.*, citing *Simmons v. T-Mobile USA, Inc.*, 2007 WL 210008, at * 4 (S.D. Tex. Jan. 24, 2007). "Unsupported assertions of widespread violations are not sufficient to meet Plaintiff's burden." *Id.* citing *Jones v. Yale Enf't Servs., Inc.*, 2015 WL 3936135, at *1 (E.D. La. June 26, 2015) (quoting *Haynes v. Singer Co., Inc.*, 696 F.2d 884, 887 (11th Cir. 1983)).

In support of her Motion, Plaintiff submits her own affidavit wherein she attested: 1) she was employed by We Care as a home healthcare worker placed in clients' homes with job duties of assisting clients with daily living activities, bathing, house cleaning, etc.; 2) Her supervisor assigned the hours she was required to work with each client; 3) Due to the nature of the work and the work days scheduled by We Care, home healthcare workers, including herself, regularly worked more than 40 hours in a week;[4] 4) During her employment from September 2018 through June

---

4      Plaintiff submitted three pay stubs in support of her affidavit; however, only one stub shows that she worked more than forty hours in any week. See Rec. Doc. 9-3, p. 2, which notes that Plaintiff worked 82 hours in one two-week period. She also submitted time sheets; however, none of the submitted time sheets indicate that she worked more than 40 hours in a week. See Rec. Doc. 9-4.

2019, she was paid "straight time" for all of her hours, including hours over forty, and that she was not paid overtime; and 5) that she had "personal knowledge from talking to We Care administrators and other home health workers that We Care did not pay its home health workers overtime for hours worked over 40 in a work week." (Rec. Doc. 9-2).

Plaintiff further submitted the affidavit of Ashley Walker, who similarly attested that: 1) Her We Care supervisor assigned the hours she was required to work with each client; 2) Due to the nature of the work and the work days scheduled by We Care, home healthcare workers, including herself, regularly worked more than 40 hours in a week; 3) During her employment, she was paid "straight time" for all of her hours, including hours over forty, and that she was not paid overtime; and 4) that she had "personal knowledge from talking to other home health workers that We Care did not pay its home health workers overtime for hours worked over 40 in a work week." (Rec. Doc. 9-6).

Plaintiff also submitted the affidavit of Samantha Migues, who attested that: 1) Due to the nature of the work and the work days scheduled by We Care, home healthcare workers, including herself, regularly worked more than 40 hours in a week; 3) During her employment, she was paid "straight time" for all of her hours, including hours over forty, and that she was not paid overtime. (Rec. Doc. 9-7).

Defendants contend that Plaintiff does not meet even the lenient threshold for conditional certification because she failed to present any evidence of others similarly situated. Specifically, Defendants submitted evidence that Ashley Walker (Plaintiff's family member) did not ever work any overtime and that Samantha Migues (also Plaintiff's family member) was involved in a scheme with other family members whereby Samantha Migues would submit false timesheets. (Rec. Doc. 13-1). According to the affidavit of We Care administrator, Crystal D. Smith-Provost, after discovering the scheme, We Care audited Samantha Migues's time sheet and paid her for the overtime they could reasonably discern that she had actually worked. (Rec. Doc. 13-1). Finally, Defendants submit that Plaintiff otherwise relies only upon hearsay, rather than evidence, for the assertion that We Care did not pay overtime to its home health workers (citing Plaintiff's Affidavit at Rec. Doc. 9-2, ¶13).

The Court finds that Plaintiff has overcome the minimal burden of conditional certification. Plaintiff's affidavit attests that she and other home health care workers performed similar duties, worked similar hours, and were subject to We Care's alleged non-payment of overtime policy. This is sufficient to satisfy the lenient standard for similarly situated. Although the Court acknowledges Defendants' evidence regarding Ashely Walker and Samantha Migues, the Court finds that this evidence is better suited as a defense to Plaintiff's claims on the merits and for

8

consideration at the decertification stage. Other courts within this District routinely grant initial certification upon similar facts. See e.g. *Richard v. Flower Foods, Inc.,* 222 F. Supp. 3d 516, 525 (W.D. La. 2016) (M.J. Whitehurst) (noting that the defendants' challenge to initial certification based upon the plaintiffs' true employment status went to the merits and was more appropriately considered at the decertification stage). See also *Defrese-Reese v. Healthy Minds, Inc.,* No. CV 18-1134, 2018 WL 6928920, at *3 (W.D. La. Dec. 19, 2018) (M.J. Kay), *report and recommendation adopted,* No. CV 18-1134, 2019 WL 97042 (W.D. La. Jan. 3, 2019); *Brown v. Body & Soul Servs., Inc.,* No. CV 16-0824, 2017 WL 2198192, at *4 (W.D. La. May 2, 2017) (M.J. Hays), *report and recommendation adopted,* No. CV 16-0824, 2017 WL 2198623 (W.D. La. May 18, 2017). Accordingly, the Court grants Plaintiff's Motion for Conditional Certification.

### B. **Proposed Class Definition**

Plaintiff proposes the following class definition:

All current and former home healthcare workers employed by We Care Homes, Inc. and/or Kyle Jones who were not paid overtime for all hours worked over forty (40) in a workweek within the last three (3) years.

(Rec. Doc. 12, p. 5).

Defendants object to Plaintiff's proposed class definition insofar as it extends to those employed during the prior three years, rather than the prior two years, based upon 29 U.S.C. §255(a). §255(a) mandates a limitations period of two years, or three

9

years for willful violations. "[C]ourts in this District have ordered that FLSA collective action notices include all persons employed up to three years before the date of the complaint." *Murillo v. Berry Bros Gen. Contractors Inc.,* No. 6:18-CV-1434, 2019 WL 4640010, at *5 (W.D. La. Sept. 23, 2019) (M.J. Whitehurst), citing cases. Thus, the Court agrees that the scope of the proposed notice may extend to employees for the prior three years, even without evidence of willful violations at this initial stage. The Court therefore approves Plaintiff's proposed class definition.

## C. **Notice**

Having found that conditional certification is proper in this case, the Court turns to the appropriate notice procedure. "To keep the opt-in process efficient, district courts 'have discretion' to 'facilitat[e] notice to potential plaintiffs.'" *In re JPMorgan Chase & Co.,* 916 F.3d 494, 500 (5th Cir. 2019), citing *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989).

Plaintiff urges the Court to order Defendants to produce the names, addresses, phone numbers, identification numbers, and email addresses of its employees over the last three years, and further to produce the dates of birth and last four digits of Social Security numbers for those whose notice is returned as undeliverable. (Rec. Doc. 12, p.13-14). Plaintiff further seeks permission to call any employees whose mail is returned as undeliverable for the purpose of obtaining their current addresses. (Rec. Doc. 12, p. 16). Plaintiff submits that she should be permitted to 1) disseminate

notice by mail (with permission to re-mail if the notice is returned as undeliverable); 2) email notice; 3) send postcard reminders before the end of the opt-in period; 4) make reminder calls to those who have not responded to the mailing of the initial notice before the end of the opt-in period; and 5) that Defendants be ordered to post the notice for sixty days in a conspicuous place in their offices. (Rec. Doc. 12, p. 17; 22). Plaintiff last proposes a deadline of seven days from an order approving notice for Defendants to produce employees' information, fourteen days from the order for Plaintiff's counsel to mail and email notice, sixty days for employees to return their signed consent forms, and thirty days from the mailing of notice for plaintiff's counsel to send reminder postcards and emails. (Rec. Doc. 12, p.20-21).

Defendants oppose Plaintiff's requested notification procedures as unnecessary and improper activities which could "suggest that the Court encourages recipients to join this litigation and authorizes aggressive direct marketing." (Rec. Doc. 13, p. 19). Defendants specifically object to telephonic and email notifications as improper direct communication with Defendant's employees and overreaching the traditional notice requirement by U.S. first class mail. Both Plaintiff and Defendants cite district court cases from across the country in support of their positions.

Another division in this Court has before ordered an FLSA defendant employer to provide employees' names, addresses, telephone numbers, dates of birth

and last four digits of Social Security numbers and further approved a notice period of sixty days. *Richard v. Flower Foods, Inc.,* 222 F.Supp.3d at 527. This Court likewise finds the forgoing parameters appropriate. Further, like the court in *Richard*, the Court does not agree that Plaintiff's counsel should be permitted to provide reminders. See *id*, relying upon *Roberts v. S. B. Southern Welding, LLC*, No. 3:14–CV–3617–B, 2015 WL 8773610, at *3 (N.D. Tex. Dec. 15, 2015) for the proposition that reminder notices would be unnecessary and could potentially be interpreted as encouragement by the court to opt into the lawsuit. Rather, the Court finds that requiring Defendants to place notice in a conspicuous place at its office would be an efficient and cost-effective means of dissemination of notice. See *id*.

This Court will also allow notice by email only in the event mailed notice is returned as undeliverable. See *Murillo,* 2019 WL 4640010, at *6. See also *Dean v. Akal Sec., Inc.,* No. 1:17-CV-00543, 2018 WL 814627, at *1 (W.D. La. Feb. 9, 2018) (M.J. Perez-Montes), noting that the court had previously authorized notice by mail or email. The Court does not find that telephone calls are appropriate.

Defendants object to the substance of Plaintiff's proposed notices, arguing that the notices should "mention the possibility that the collective action may be decertified and that the potential claimants may have to litigate their claims individually. (Rec. Doc. 13, p. 22). Defendants further request the notice include the following disclosure: "If you do not prevail on your claim, court costs and

expenses may possibly be assessed against you." (Rec. Doc. 13, p. 22). Another division of this Court has before considered similar objections:

> While courts are divided on objection three—whether notice about potential costs to the plaintiffs must be included—courts in this district have denied its inclusion. *See, e.g.*, *Reyes v. Quality Logging, Inc.*, 52 F. Supp.3d 849, 853-54 (S.D. Tex. 2014) ("the general authority on this question is decidedly split"). In *Quality Logging* the court found that such language is "unnecessary and potentially confusing." *Id.* citing *Sexton v. Franklin First Fin., Ltd.*, 2009 WL 1706535, at *12 (E.D.N.Y. 2009) and *Guzman v. VLM, Inc.*, 2007 WL 2994278, at *8 (E.D.N.Y. 2007). Given the involvement of likely unsophisticated opt-in plaintiffs in this case, the undersigned follows the approach of cases like *Quality Logging* in recognizing that the disproportionate "in terrorem effect" of providing such notice could "outweigh[ ] the likelihood" such costs will significantly impact the instant case. *Id.* Thus, the joint notice does not need to contain references to counterclaims or court costs, but it is the responsibility of class counsel to render class members appropriate advice on such matters.

*Murillo,* 2019 WL 4640010, at *6.

This Court agrees and will not require the notice to include statements pertaining to potential decertification or assessment of court costs; however, the Court expects class counsel to advise Plaintiffs appropriately. Therefore, the Court approves Plaintiff's proposed Notice of Collective Action Lawsuit at Rec. Doc. 9-8. The Court likewise approves Plaintiff's proposed email notification at Rec. Doc. 9-9 only to the extent that the email will be sent to those individuals whose mail is returned as undeliverable. As noted above, the Court does not approve of reminders.

Finally, Defendants object to Plaintiff's proposed timeline as unreasonably short. Rather than seven days to produce employee information, Defendants seek twenty-one days. In reply, Plaintiff does not object to Defendants' proposed twenty-one day deadline, provided that the Court likewise extends the subsequent deadline for Plaintiff to disseminate notice. (Rec. Doc. 16, p.9). Thus, the Court holds that Defendants have twenty-one days to produce employees' names, addresses, phone numbers, email addresses, dates of birth, and last four digits of Social Security numbers. Plaintiffs shall have fourteen days from the receipt of the information from Defendants to disseminate the approved notice.

## **Conclusion**

For the reasons discussed herein, Plaintiff's Motion to Conditionally Certify FLSA Collective Action, Approve Notice and Expedited Consideration (Rec. Doc. 9) is GRANTED. Defendants shall have twenty-one (21) days from the date of this ruling to provide names, addresses, phone numbers, email addresses, dates of birth, and last four digits of Social Security numbers for current and former We Care employees of the last three years. Plaintiff shall have fourteen (14) days from receipt of the employee information to disseminate the approved notice at Rec. Doc. 9-8.

THUS DONE in Chambers, Lafayette, Louisiana on this 29th day of October, 2019.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE